**LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.**
Michael D. Cassell, Esq.
744 Broad Street, Fl 16, #28
Newark, New Jersey 07102
(973) 735-2700

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CSC TKR, INC. d/b/a CABLEVISION OF RARITAN VALLEY, | )<br>)<br>) CASE NO. _____ |
| Plaintiff, | )<br>) JUDGE _____ |
| vs. | )<br>) |
| SUNIL GULATI, | )<br>) |
| Defendant. | )<br>) |

The plaintiff, CSC TKR, Inc. d/b/a Cablevision of Raritan Valley (hereinafter referred to as "Cablevision" or "plaintiff"), by its attorneys, Lefkowitz, Louis, Sullivan & Hogan, L.L.P., as and for its Complaint herein, alleges the following:

**Summary of Claims**

1. This action seeks declaratory and injunctive relief and monetary damages on account of the defendant's statutorily prohibited tampering with plaintiff's cable television system and unauthorized reception, or, in the alternative, assistance in the unauthorized reception, of plaintiff's private telecommunications signals through defendant's use of a compatible "pirate" converter-decoder device or devices to descramble and receive plaintiff's scrambled cable television programming services without plaintiff's authorization. The defendant used, or, in the alternative, assisted in the use of "pirate" cable television decoding/descrambling equipment for purposes of intercepting plaintiff's premium, pay per view and other scrambled

programming services which the defendant was not authorized to receive and for which the defendant did not pay in violation of the Communications Act of 1934, as amended, 47 U.S.C. § 553(a)(1).

## Jurisdiction and Venue

2. This action arises under 47 U.S.C. § 553(a)(1).

3. This Court has original jurisdiction over this action under 28 U.S.C. § 1331. Venue is properly established in the District of New Jersey pursuant to 28 U.S.C. § 1391(b), as the defendant resides in the District of New Jersey and plaintiff does business in the District of New Jersey.

## Parties

4. At all times hereinafter mentioned, plaintiff CSC TKR, Inc. d/b/a Cablevision of Raritan Valley is a Delaware corporation authorized to conduct business in New Jersey with its principal place of business at 683 Route 10, Randolph, New Jersey 07869.

5. At all times hereinafter mentioned, defendant Sunil Gulati is an individual who resides at 456 Horizon Drive, Edison, New Jersey 08817.

## Factual Background

## The Cable Operator

6. Franchises have been duly awarded to Cablevision pursuant to which it has the right to construct, operate and maintain cable television systems in parts of New Jersey. Cablevision offers cable television services to subscribers who request and pay for them.

7. Cablevision's programming is offered to its subscribers in "packages" of programming services. "Basic" and "Family" tiers are packages of programming services that a subscriber receives at a monthly rate. Subscribers may also elect to purchase certain "premium"

programming services, such as Cinemax, Home Box Office and Showtime, for an additional monthly charge per service.

8. Additionally, Cablevision offers pay per view programming, a service which enables Cablevision subscribers to purchase individual movies, sporting events, or other entertainment for a per event fee over and above the subscriber's regular monthly fee for cable television service.

9. Each subscriber is entitled to receive only that level of programming services that he or she selects and purchases.

10. The signals for nearly all of Cablevision's cable television services are transmitted to Cablevision's reception facilities from orbiting satellites and other means of over-the-air radio communication. Cablevision thereafter retransmits these same signals to subscribers' homes and businesses through a network of cable wiring and equipment (the "System"). In order for subscribers to receive these transmitted cable television signals on their television sets, Cablevision provides each subscriber with a device known as a "converter," which converts the multiple signals simultaneously transmitted over the System into different "channels," which can be viewed on subscribers' television sets.

11. To prevent subscribers from receiving programming services for which they have not paid, Cablevision encodes or "scrambles" the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a "descrambler" or "decoder," which is incorporated into the converter. The descrambler decodes the scrambled service so that the programming selected and purchased can be viewed clearly on the subscriber's television set. Programming services not purchased will continue to be scrambled and therefore will be unviewable on the subscriber's television set.

12. Cablevision's system is "addressable," which means that the converter-decoder Cablevision provides to each subscriber is programmed by a central computer to authorize viewing of only programming services purchased by that subscriber. Each subscriber who purchases services that are scrambled will have his or her decoder programmed by Cablevision's central computer to receive only those services selected and purchased.

13. Encoding ("scrambling") is a primary security method employed by plaintiff and other cable television operators to prevent subscribers from receiving services for which they have not paid.

14. It is possible for a dishonest individual to install an unauthorized or "pirate" converter-decoder (one illegally programmed to descramble all of plaintiff's programming services without plaintiff's authorization) onto the plaintiff's cable television system or otherwise tamper with plaintiff's equipment in order to receive all of Cablevision's scrambled programming without authorization and without making payment therefor.

15. Pay per view, which is one of the scrambled services, includes selections that typically range in cost from approximately $4.00 to $49.99. Pay per view programming is available throughout the day on a per event or movie basis. Premium services, which are also scrambled by Cablevision, range in price from approximately $1.95 to $14.95 per month per service, and packages of premium services range in cost between $40.75 and $80.95. Hence, a "pirate" converter-decoder could conceivably steal hundreds of dollars worth of Cablevision's premium and pay per view services each month.

16. The theft of cable service has a negative impact on the various political subdivisions of New Jersey serviced by Cablevision, which derive franchise fees from a cable operator's gross revenues. The lost revenues to cable operators from the theft of cable services

adversely affects the ability of those operators to purchase and maintain a high quality of programming services for its subscribers. Cable piracy also creates an unfair subsidy to "freeloaders," which is subsidized by honest, paying subscribers.

17. Cablevision's signal is a private telecommunication not intended for public use or enjoyment without Cablevision's prior authorization.

### Defendant's Misconduct

18. Defendant has been engaged in the ongoing unauthorized reception and interception of plaintiff's cable television programming services by his use of a "pirate" cable television descrambling and decoding device or devices and equipment purchased by the defendant from Computech Electronics, Inc. of Knoxville, Tennessee (hereinafter "Computech"), or, in the alternative, he has assisted others in such unauthorized reception or interception.

19. Defendant has purchased one or more "pirate" cable television descrambling and decoding devices and equipment from Computech.

20. The defendant has used the "pirate" converter-decoder and descrambling device or devices obtained from Computech at his residence to receive and intercept Cablevision's cable television programming services without Cablevision's authorization, or, in the alternative, has assisted others in the unauthorized reception and interception of such services by distributing such equipment to them for such purposes.

21. The "pirate" converter-decoder(s) that the defendant obtained from Computech and thereafter used or distributed was modified to circumvent the security functions of Cablevision's scrambling technology and possesses the illicit function of descrambling all scrambled "premium" and "pay per view" cable television programming services available on Cablevision's System without payment to, or authorization from, Cablevision.

5

22. At all times, the defendant engaged in the unauthorized reception, or assisted in the unauthorized reception, of Cablevision's programming services with intent and specific knowledge that the use of such a device or devices would enable him and/or others to intercept and receive Cablevision's cable television programming services without Cablevision's authorization and without having made payment to Cablevision for reception of those programming services. The defendant's unauthorized reception of Cablevision's cable television programming services has been ongoing and continuous since the date that the defendant obtained his "pirate" device or devices from Computech. Defendant has engaged in the actions alleged herein for the purposes of his private financial gain and has acted at all times willfully and deliberately.

### Count I

### Violations of 47 U.S.C. § 553

23. Plaintiff incorporates by reference paragraphs 1 through 22, inclusive.

24. The "pirate" cable television converter-decoder device or devices used by the defendant, or distributed by defendant to others, was specifically designed to descramble the plaintiff's encoded signals, thereby permitting reception of plaintiff's programming without payment for those services. Said conduct violates 47 U.S.C. § 553(a)(1).

25. By using the "pirate" cable television converter-decoder(s), the defendant, or others whom defendant assisted, was able to view all of Cablevision's premium, pay per view, and other scrambled programming without paying monthly or per event fees for said programming in violation of 47 U.S.C. § 553(a)(1).

26. Cablevision's cable television programming services are "radio communications" within the meaning of 47 U.S.C. § 153(b) and are protected from unauthorized interception and reception under 47 U.S.C. § 553(a)(1).

27. The defendant violated 47 U.S.C. § 553(a)(1) willfully and for purposes of his private financial gain.

28. Cablevision has not authorized or consented to the use of a "pirate" converter-decoder(s) by the defendant, nor has Cablevision authorized or consented to the rendering of assistance by the defendant in the reception or interception of Cablevision's signals.

29. Cablevision is a "person aggrieved" by the defendant's violations, and is authorized to institute this action against the defendant under 47 U.S.C. § 553(c)(1).

30. The violations of 47 U.S.C. § 553(a)(1) committed by the defendant have injured and will continue to injure Cablevision's ability to maximize its revenues by depriving it of the benefit of subscribing to its programming services and by injuring its goodwill and reputation.  As a further result of such violations, the defendant, or those whom he assisted, has received and will continue to receive illegal and unjust gains by avoiding payment to Cablevision for the reception of Cablevision's premium, pay per view and other scrambled programming.

31. Moreover, honest paying subscribers may have their services negatively affected as a result of the defendant's violations.

32. Upon information and belief, unless restrained by this Court, the defendant will continue to violate 47 U.S.C. § 553.  Moreover, the defendant knew or should have known that the use of such unauthorized equipment was prohibited. Such violations of the Communications Act have caused and will continue to cause Cablevision irreparable harm. Cablevision cannot practically determine the amount of lost revenues resulting from the

7

defendant's unlawful conduct.  In addition to diminishing Cablevision's revenues, the defendant's unlawful conduct injures Cablevision's reputation and goodwill, its ability to attract and finance the future acquisition of quality services, and further impairs its ability to enhance its future growth and profitability.  Furthermore, the political subdivisions of the state of New Jersey in which Cablevision's System is located lose franchise fees as a direct result of defendant's misconduct.

33. Plaintiff has no adequate remedy at law to redress the defendant's violations of 47 U.S.C. § 553(a)(1).

**WHEREFORE,** the plaintiff requests that this Court grant the following relief:

(1) Declare that defendant's unauthorized use, or, in the alternative, assistance in the unauthorized use, of equipment designed to decode encrypted cable television signals violated Title 47, U.S.C. § 553(a)(1) and that such violations were committed willfully and for purposes of defendant's direct or indirect commercial advantage or private financial gain;

(2) In accordance with Title 47, U.S.C. § 553(c)(2)(A), enjoin defendant, his agents, servants, employees, affiliated business entities, successors, assigns, and any entities or persons controlled directly or indirectly by him or acting on his behalf from the use, sale, modification and/or distribution of electronic equipment enabling the unauthorized interception of cable television programming services, from aiding and abetting or engaging in the interception, divulgence, reception or display of the cable television programming, service or signal of plaintiff, whether transmitted by air or by cable, without the express authorization of plaintiff, and from connecting, attaching, splicing into, tampering with or in any way using plaintiff's system for the purpose of obtaining any of the programming services of plaintiff without plaintiff's express authorization, and from manufacturing, purchasing, obtaining, utilizing,

installing, or possessing any device or equipment capable of descrambling, intercepting, receiving, decoding or in any way making available the programming and services of plaintiff without plaintiff's authorization;

(3) In accordance with 47 U.S.C. § 553(c)(2)(B), award plaintiff:

(a) the actual damages which the plaintiff has suffered, together with any additional profits earned by defendant as a result of defendant's unauthorized modification and/or use of prohibited electronic equipment; or, alternatively at plaintiff's election,

(b) statutory damages in the amount of up to $10,000 against the defendant for all violations of 47 U.S.C. § 553(a)(1) committed by the defendant;

(4) Enhanced damages of up to $50,000 against the defendant, as his alleged actions were committed willfully and for purposes of private financial gain;

(5) In accordance with 47 U.S.C. § 553(c)(3)(A)(i), order an accounting of all profits and expenses realized by defendant in violation of the foregoing statutes;

(6) In accordance with 47 U.S.C. § 553(c)(2)(C), direct the defendant to pay plaintiff all of plaintiff's costs and reasonable attorneys' fees; and

(7) Grant such other and further relief as is just.

Dated:  Newark, New Jersey
        March 4, 2005

> Respectfully submitted,
> **LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.**
> Attorneys for Plaintiff
>
> By:<u>s/ Michael D. Cassell</u>
>    Michael D. Cassell (MC0236)
>    744 Broad Street, Fl 16, #28
>    Newark, New Jersey 07102
>    (973) 735-2700

skh/b21